[Cite as *State v. Durst*, 2026-Ohio-2600.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 25CA1 |
| Plaintiff-Appellee, | : | |
| | : | |
| v. | : | <u>DECISION AND JUDGMENT ENTRY</u> |
| | : | |
| DANNY R. DURST, | : | |
| | : | **RELEASED: 06/30/2026** |
| Defendant-Appellant. | : | |

<u>APPEARANCES:</u>

Christopher Pagan, Repper-Pagan Law, Ltd., Middletown, Ohio, for appellant.

Jason Holdren, Gallia County Prosecuting Attorney, and Isaac Beller, Assistant Gallia County Prosecuting Attorney, Gallipolis, Ohio, for appellee.

Wilkin, J.

{¶1} This is an appeal from a Gallia County Court of Common Pleas judgment entry of conviction in which appellant, Danny R. Durst, pleaded guilty to eight counts of rape, first-degree felonies in violation of R.C. 2907.02(A)(2). The trial court imposed a mandatory minimum prison term of eight years to each offense and ordered the offenses to be served consecutively.

{¶2} In two assignments of error, Durst challenges his sentence. In the first assignment of error, Durst maintains that his consecutive sentences are contrary to law and unsupported by the record of the case. We disagree and overrule this assignment of error. We, however, sustain Durst's second assignment of error in which he argues that the imposition of an indefinite prison term pursuant to the Reagan Tokes Law is contrary to law. Durst's offenses

were committed prior to the effective date of the Reagan Tokes Law.  Therefore, the indefinite prison sentences are contrary to law.  Accordingly, we remand the matter to the trial court for resentencing.

FACTS AND PROCEDURAL BACKGROUND

{¶3} In September 2024, the grand jury issued an indictment against Durst on 16 counts, with 11 of the counts involving the victim A.P., and the remaining 5 counts involving the victim T.F.  Durst was charged with five counts of rape, as a first-degree felony, and six counts of sexual battery as a third-degree felony involving the victim A.P.  The offenses were for the time period between January 1, 2009 to January 31, 2010, February 1, 2010 to December 31, 2011, and January 26, 2013 to January 25, 2014.

{¶4} Durst was also charged with three counts of rape and two counts of sexual battery involving the victim T.F.  Two of the rape counts were first-degree felonies and one rape count, count twelve in the indictment, had a potential life sentence because it included the specification that T.F. was under the age of 13 years.  The time frame for the offenses involving T.F. were from April 7, 2012 to April 6, 2013, April 7, 2013 to April 6, 2014, and April 7, 2013 to December 31, 2014.

{¶5} Durst initially pleaded not guilty to all offenses, but on November 27, 2024, he and the State reached a plea agreement.  The State agreed to dismiss all of the sexual battery offenses and amend the rape offense in count twelve to remove the specification that T.F. was less than 13 years of age.  In exchange, Durst pleaded guilty to the amended rape offense in count twelve, as a first-

degree felony, and guilty to the remaining seven first-degree felony rape counts.

{¶6} A presentence investigative report was ordered and a sentencing hearing was held on January 8, 2025. Three victim impact statements were submitted to the trial court, and portions of those statements were read at the sentencing hearing. The State urged the trial court to impose the maximum sentence, while Durst's counsel requested the minimum sentence. Durst elected not to address the court and simply stated that he was "just sorry." After taking the statements into consideration, the trial court sentenced Durst to a mandatory prison term of eight years for each count, and ordered the sentences to be served consecutively. The trial court imposed an indefinite prison term on some of the counts and stated that the aggregate prison term is a minimum of 64 to 68 years.

{¶7} It is from this judgment entry that Durst appeals.

ASSIGNMENTS OF ERROR

I.      THE TRIAL COURT'S IMPOSITION OF CONSECUTIVE SENTENCES WAS CONTRARY TO LAW AND CLEARLY UNSUPPORTED BY THE RECORD.

II.     THE TRIAL COURT IMPOSED A CLEARLY CONTRARY-TO-LAW SENTENCE BECAUSE DURST'S OFFENSE CONDUCT PREDATED THE REAGAN TOKES EFFECTIVE DATE.

FIRST ASSIGNEMTN OF ERROR

{¶8} Durst initially clarifies that his sentence was not a jointly-recommended sentence, thus, we have jurisdiction to review his sentence. Durst then asserts that his consecutive sentences are not supported by the record of the case. He argues that the crimes occurred more than a decade before Durst's

indictment, thus, the proportionality to public danger is low especially since he has no criminal history.  Durst, further argues that the trial court's finding that the rapes were conducted as part of one or more courses-of-conduct is "contrary to law and clearly belied by the record."  According to Durst, the trial court's stacking of the five rapes involving A.P. with the three rapes involving T.F. did not meet the course-of-conduct requirement pursuant to R.C. 2929.14(C)(4)(b).  Durst contends that the rapes occurred three to six years apart.  Based on this, Durst requests that we reverse his consecutive sentences.

{¶9} The State in response asserts that the trial court's consecutive findings are supported by the record of the case and Durst's consecutive sentences should be affirmed.  The State maintains that Durst sexually assaulted his minor stepdaughters over the course of years, and that his sentence is not disproportionate.  The State contends that not having a criminal record does not negate the need to protect the public from Durst, who over the course of years raped his minor stepdaughters.

Law and analysis

{¶10} We must review Durst's sentence pursuant to the dictates of R.C. 2953.08(G).  *See State v. Marcum*, 2016-Ohio-1002, ¶ 16.  "R.C. 2953.08(G)(2)(a) permits an appellate court to modify or vacate a sentence if it clearly and convincingly finds that 'the record does not support the sentencing court's findings under' certain specific statutory provisions."  *State v. Jones*, 2020-Ohio-6729, ¶ 28.

{¶11} Generally, a trial court is required to make certain findings pursuant

to R.C. 2929.14(C)(4) before ordering a defendant to serve multiple prison terms consecutively.  The trial court is required to make the consecutive-sentence findings at the disposition hearing and incorporate the findings in the sentencing entry.  *State v. Bonnell*, 2014-Ohio-3177, ¶ 23.  But "the trial court is not required to provide a word-for-word recitation of the language of the statute or articulate reasons supporting its findings."  *State v. Fridley*, 2017-Ohio-4368, ¶ 48 (12th Dist.), citing *State v. Setty*, 2014-Ohio-2340, ¶ 113 (12th Dist.).

{¶12} R.C.2929.14(C)(4) provides that:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶13} "The plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record."  *State v. Gwynne*, 2023-Ohio-3851, ¶ 5 (lead opinion).

"The clear-and-convincing standard for appellate review in R.C. 2953.08(G)(2) is written in the negative." *Id.* at ¶ 13.

**{¶14}** "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1957), paragraph three of the syllabus.

**{¶15}** We find that the trial court's imposition of consecutive sentences in the matter at bar was supported by clear and convincing evidence. In imposing the consecutive sentences, the trial court at the sentencing hearing found that Durst

> doesn't have any prior record um, however I also find that the injury to the uh, victims were exacerbated by their age. They were young teenagers when this sexual assault began. Find the victims suffered serious psychological harm and related to the physical harm from the sexual assault. Also find that the defendant's relationship with the victims facilitated the offenses and that he is and was uh, at the time at least, his, a stepfather.

**{¶16}** The trial court at the sentencing hearing also made the required consecutive-sentence findings, which it incorporated in the judgment entry:

> I am going to order that the offender serve these uh, terms consecutively. Find consecutive sentence is necessary to protect the public from future crime, punish the offender. Uh, find the consecutive sentences are not disproportionate to the seriousness of the conduct or the danger the offender poses to the public. And at least two of these offenses were part of one or more course of conduct, the harm caused was so great or unusual no single term adequately reflects the seriousness of the conduct.

**{¶17}** And the record of the case includes Durst's confession to forcing the

minors to have sexual intercourse with him, a presentence investigative report,

and three victim impact statements.  We note that Durst's eight rape convictions

involved two victims: A.P. and T.F.  However, as part of Durst's guilty plea

agreement, the State agreed not to pursue additional charges involving another

stepdaughter.  The two victims, A.P. and T.F., involved in the convictions before

us, detailed in their statements the harm caused by Durst's forceful sexual

assault on them.  A.P. stated that

> I've been in counseling at Integrated Services because of the nightmares and the fear that the sexual assault has caused over the years.  It's been rough to be able to get through it and I needed the help to be able to speak about it with someone.  The crime that was done to me was sexual assault.  It started at 14 and didn't end for four years.  Through those years I lived with not being believed because no one thought it was happening to me.  It takes a lot in me to pull myself together every day because of what I went through.  I don't let it bring me down.  I want to know why he thought it was okay to do that?  Why take my innocence from me?  I was just a kid.  It hurts when you thought they were supposed to be the dad you never had but turned out to be the monster you end up fearing.

{¶18} The victim T.F. also explained the trauma and suffering she has

been experiencing:

> I suffered the crime of sexual assault as a child, not just once, but twice, totaling seven years and I have one question.  Why did you choose to harm not one, but three of the children who were supposed to be your children.  I can't even fathom why you thought that it was okay to sexually abuse a child, even more sexually abuse more than one.  It's vile and it's disgusting.  You've damaged me mentally, physically and psychologically.  I can't sleep properly without taking medication that helps with that.  I can't get past the fact that I was supposed to be your daughter and you used your position to take advantage of an innocent child.  I don't understand why just being your daughter wasn't enough for you, instead you chose to be a predator.  I have extreme paranoia because of what's happening to me let alone that your father did the same thing and you still took the same initiative to do the same.  I blame you for my distrust in everyone and I blame my mother for not listening or paying

attention.  I also blame your mother for never believing or seeing what was going on.  Each and everyone of you failed to come to the rescue of multiple children and that's not okay.  You've altered my mental state to the point that I see a psychiatrist monthly.  Once the investigation started my paranoia and unease became stronger than ever causing me to have stress induced seizures and severe panic and anxiety attacks.  I have severe PTSD and depression.  Sometimes I can't sleep at all and I am at all hours, and I am up at hours of the night checking windows and doors.  My relationships with family and friends have basically come to a complete halt.  Out of five siblings that I used to speak to on a daily basis I now to speak to one nearly every day.  The others I speak to very little.  This crime coming to light has created issues between siblings that shouldn't have ever happened.  I now have a brother that I can barely stand because of the fact that he believed you and what was supposed to be our mother.  The friendships I created along the way before this crime came about have been broken due to the slander you and your mother have been passing through the county.  These are things that I will never get back and for my mother to sit aside and allow it to happen is just as bad as stating those things herself.  You've ruined what was supposed to be a lifetime commitment and for that I will never be able to forgive even though I now know who's been there, even when not always present, and who's just been there for their own benefit.  I would like to ask the Judge for a minimum of 50 years.  I ask for this to be the minimum because of the suffering myself and my siblings have encountered and endured.  I feel that with the anxiety, PTSD, depression, panic attacks and stress induced seizures that this will give me less stress and time for myself to realize that there's no need to panic because he won't be able to reach out to me or get to me in any way.

### A. Course-of-conduct

{¶19} Durst asserts that the trial court's consecutive-sentence finding that he committed the offenses as a course of conduct is not supported by the record of the case because the sexual assault committed to A.P. was years prior to the sexual assault committed to T.F.  We disagree.

> [C]ourts have consistently held that a "course of conduct" may be established by "some connection, common scheme, or some pattern or psychological thread that ties offenses together." *State v. Cooper*, 2021-Ohio-4057, ¶ 53 (11th Dist.), citing *State v. Summers*, 2014-Ohio-2441, ¶ 14, (2d Dist.); *State v. Sapp*, 2004-Ohio-7008, syllabus.

*State v. Jones*, 2026-Ohio-68, ¶ 78 (12th Dist.).

**{¶20}** And in *Jones*, the Twelfth District Court of Appeals affirmed Jones'

consecutive sentence, concluding there was support for the trial court's finding of

course of conduct in which "Jones sexually abused three minor children on

numerous occasions over several years, exploiting their vulnerabilities based on

age, lack of knowledge, and inability to protect themselves." *Id*. at ¶ 79. The

Twelfth District elaborated that "[t]he two Rape offenses were part of the course

of conduct Jones committed against Alice. Two GSI offenses were part of the

course of conduct Jones committed against Chloe. Another GSI offense was

part of the course of conduct committed against Beth." *Id*. at ¶ 81. In reaching

this conclusion, the Twelfth District overruled a similar argument as presented by

Durst:

> That Jones committed different sexual acts on the victims, years apart, does not undermine this conclusion. Jones repeatedly acted with a sexual motivation and preyed upon the victims to whom he had access, often engaging in grooming behaviors such as showing them pornography or requesting back rubs. He would then isolate the victims and commit prohibited sexual conduct.

*Id*. at ¶ 82.

**{¶21}** Similarly here, Durst as the stepfather to A.P. and T.F., prayed on

the minors and forced them to perform sexual conduct for his sexual motivation.

He raped each victim more than once. Therefore, we find a common connection

and psychological scheme tying these offenses establishing that "the multiple

offenses were committed as part of one or more courses of conduct." *See* R.C.

2929.14(C)(4)(b).

B. Proportionate

**{¶22}** Durst also asserts that his consecutive sentences are not proportionate to the danger he poses to the public because these crimes occurred a decade prior to his indictment, he has not committed any offenses since, and he has no criminal record.  We disagree.

**{¶23}** First, we note that because of the seriousness of Durst's offenses, he is designated as a Tier III sexual offender, in which he must register for life. *See* R.C. 2950.01(A)(1), (G); R.C. 2950.06(B)(3).  And the General Assembly found that "Sex offenders and child-victim offenders pose a risk of engaging in further sexually abusive behavior even after being released from imprisonment, a prison term, or other confinement or detention, and protection of members of the public from sex offenders and child-victim offenders is a paramount governmental interest."  R.C. 2950.02(A)(2).

**{¶24}** Second, the record demonstrates that the harm Durst caused to A.P. and T.F. cannot be quantized and is unusual and warrants multiple sentences.  A.P. and T.F. were his minor stepdaughters when he sexually assaulted them.  He not only caused them physical harm by forcing the sexual assault, but he also isolated them from the rest of their family, friends, and community.  They continue to suffer physically and psychologically.

**{¶25}** We find the Tenth District Court of Appeals' decision in *State v. O.E.P.-T*, persuasive in similarly finding the consecutive sentence proportional when O.E.P.-T sexually assaulted his minor stepdaughter over a period of approximately six years:

The record of this case indicates the nature of the offenses, the severity of appellant's course of criminal conduct over a lengthy period of time, and the psychological harm to R.S. all contribute to our determination that the record clearly and convincingly supports the trial court's findings that the offenses were more serious than conduct normally constituting the offenses of rape and sexual battery, and that the harm caused was so great or unusual that no single prison term for any of the offenses committed adequately reflects the seriousness of his conduct.

2023-Ohio-2035, ¶ 111 (10th Dist.).

{¶26} Wherefore, we overrule Durst's first assignment of error and conclude that the record supports the imposition of consecutive sentences.

SECOND ASSIGNMENT OF ERROR

{¶27} Under this assignment of error, Durst maintains that the trial court's imposition of an indefinite prison sentence was contrary to law because his offenses predate the Reagan Tokes Law.

{¶28} The State agrees that Durst's indefinite prison sentence of 64 years to 68 years is contrary to law. The State, however, requests a limited remand to correct the judgment entry to reflect a definite 64-year prison term, rather than a remand for resentencing.

Law and analysis

{¶29} As we indicated, we review Durst's sentence pursuant to the dictates of R.C. 2953.08(G). *See State v. Marcum*, 2016-Ohio-1002, ¶ 16. Pursuant to R.C. 2953.08(G)(2)(b), an

appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate

court may take any action authorized by this division if it clearly and convincingly finds either of the following:

. . .

(b) That the sentence is otherwise contrary to law.

**{¶30}** "Effective March 22, 2019, the Reagan Tokes Law established indefinite-sentencing provisions for people convicted of non-life-sentence felony offenses of the first or second degree." *State v. Maddox,* 2022-Ohio-764, ¶ 4. The Reagan Tokes Law, however, does not apply to Durst, because the offenses he committed were prior to March, 2019. R.C. 2929.14(A)(1)(b) states that

> (A) Except as provided in division (B)(1), (B)(2), (B)(3), (B)(4), (B)(5), (B)(6), (B)(7), (B)(8), (B)(9), (B)(10), (B)(11), (E), (G), (H), (J), or (K) of this section or in division (D)(6) of section 2919.25 of the Revised Code and except in relation to an offense for which a sentence of death or life imprisonment is to be imposed, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender pursuant to this chapter, the court shall impose a prison term that shall be one of the following:
>
> . . .
>
> (b) For a felony of the first degree committed prior to March 22, 2019, the prison term shall be a definite prison term of three, four, five, six, seven, eight, nine, ten, or eleven years.

**{¶31}** And "the authority for a trial court to impose sentences derives from the statutes enacted by the General Assembly." *State v. Bates*, 2008-Ohio-1983, ¶ 12. Durst's eight rape convictions were committed prior to March 2019, and were first-degree felonies. Therefore, the prison term that may be imposed was a definite term ranging from 3 years to 11 years. But that is not what occurred here.

**{¶32}** In the matter at hand, the trial court at the sentencing hearing ordered Durst to "serve a mandatory *minimum* term of eight years" on Counts 1, 5, 7, 9, 12, 13, and 15, but on Count 3 ordered him to "serve a mandatory term of

eight years in prison." (Emphasis added).  The court further stated at the conclusion of the hearing that Durst "will serve a mandatory minimum stated term of 64 years."  The written judgment entry, however, imposed a "mandatory minimum of eight (8) years" on each count and ordered the terms to be served consecutively for an aggregate "mandatory minimum [of] sixty-four (64) years with a maximum of sixty-eight (68) years."

{¶33} Because the trial court imposed a prison term that is not authorized by statute, Durst's sentence is contrary to law.  Accordingly, we remand the matter to the trial court for resentencing.

{¶34} We, therefore, sustain Durst's second assignment of error and remand the matter for resentencing.

CONCLUSION

{¶35} We overrule Durst's first assignment of error but sustain his second assignment of error and remand the matter for resentencing.

**JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED.**

.

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART and the CAUSE IS REMANDED. Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. and Abele, J.:  Concur in Judgment and Opinion.


For the Court,


BY: _____
Kristy S. Wilkin, Judge


### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**